# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

WELLS FARGO BANK, N.A.,

  Plaintiff,       :  Case No. 3:07-cv-449

 -vs-              Magistrate Judge Michael R. Merz

              :

LaSALLE BANK NATIONAL
ASSOCIATION,

  Defendant.

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION *IN LIMINE*

  This case is before the Court on Plaintiff's Motion *in Limine* to Preclude Consideration of Mitigation of Damages (Doc. No. 384).  Additional briefing appears at Doc. Nos. 385, 386, and 389.

  The Motion addresses the issue the Court left open in its Decision and Order on Wells Fargo's Motion to Enforce ("Decision," Doc. No. 381).  In that Decision, the Court noted that "Wells Fargo merely responds that mitigation is irrelevant for reasons it does not explain but which it appears to believe are inherent in the nature of awarding the Repurchase Price as the measure of damages." (Decision, Doc. No. 381, PageID 24872-24873.)

  In the Decision, the Court determined that Wells Fargo was entitled to "damages measured by the Repurchase Price at the time of the breach of contract. . ." *Id.*., PageID 24872.  This conclusion was based on the premise that that was the contractual remedy agreed upon by the parties in the MLPA and the PSA. Because both borrowers had taken bankruptcy and the loans were presumably discharged in those bankruptcies, it was not possible to order the specific performance of repurchase, but it is possible to measure damages by the Repurchase Price.

Wells Fargo argues that, because the Purchase Price is a liquidated damages clause under New York law, "evidence of mitigation is not permitted." (Motion, Doc. No. 384, PageID 24880[1]) The authorities cited by the parties do not persuade the Court that New York law requires the repurchase remedy to be analyzed as a liquidated damages clause. *See, e.g., Southern California Federal Savings & Loan Assn. v. Fugazy Express, Inc.*, 1988 U.S. Dist. LEXIS 373 (S.D.N.Y. 1988).

Wells Fargo also argues that "the Purchase Price, as negotiated by the parties, simply does not include a mitigation component." *Id..* However, Plaintiff offers no extended analysis on this argument in its opening brief. In contrast, LaSalle cites authority for the proposition that some failures to mitigate are relevant in loan repurchase cases. *See, e.g., LaSalle Bank N.A. v. Nomura Asset Capital Corp.*, 846 N.Y.S. 2d 95 (App. Div. 1st Dept. Nov. 13, 2007).

In its Reply, Wells Fargo argues "[w]hen a plaintiff gives timely notice of breach to a defendant loan seller, and the defendant refuses to remedy the breach, the risk that the loans and/or collateral property may subsequently decline in value shifts to the defendant. The defendant cannot shift the risk back to the plaintiff by arguing that plaintiff failed to mitigate its damages."(Reply, Doc. No. 386, PageID 24923, *citing Resolution Trust Corp. v. Key Financial Services, Inc.*, 280 F.3d 12, 18 (1st Cir. 2002)). Wells Fargo particularly focuses on the First Circuit's language "A repurchase provision is designed to shift the risk to the selling party in the event that a dispute arises."

The First Circuit's analysis is premised on the notion that the parties in that case had carefully allocated the risk among themselves in the mortgage purchase and loan pooling agreements entered into in that case. In adopting the premise that payment of the Purchase Price was one of the three contractual remedies agreed on by the parties here and the one which would be used to measure damages, this Court basically agreed with the First Circuit's premise. (See Decision, Doc.

---

[1] Presumably Wells Fargo means evidence of failure to mitigate.

2

No. 381, PageID 24870-24871, quoting *Resolution Trust*, *supra*.)

LaSalle has offered no proof that the parties to the MLPA and PSA in this case had any different intention from the ordinary intention to be inferred from the use of language similar to that involved in *Resolution Trust*[2]. LaSalle argues, however, that New York law generally requires mitigation of damages in contract cases.

The Court concludes that the MLPA and PSA do in fact allocate most risks of breach to the seller, LaSalle. Therefore, LaSalle may not offer a broad array of proof of failure by Wells Fargo to mitigate damages.[3]

However, one cannot infer from the MLPA and PSA that the risk of inadequate servicing of the loans post-default was allocated to LaSalle. The documents create obligations on the special servicer to service loans that have been transferred to it and that set of obligations does not cease upon notice to the seller of breach or subsequent default by the seller in performing one of the contractual remedies. In other words, the contracts support the argument LaSalle makes as a matter of equity: control of servicing the loans has remained throughout the post-default period in Crown NorthCorp whom LaSalle has had no ability to direct or control. Therefore at the bench trial on damages, LaSalle may offer evidence of Crown NorthCorp's failure to perform its duties as special

---

[2]Indeed, it is remarkable that both parties in this case focus so much on other reported cases and so little on the actual language of the MLPA and PSA. They are long documents (200 pages for the PSA, 50 pages for the MLPA with schedules), apparently intended by the "transactional" attorneys who prepared them to cover all relevant questions, yet leaving myriad questions to be answered from outside the documents by the "litigators." So much for the ability to control conflict with paper. Henry Kissinger has offered a parallel critique of John Foster Dulles' attempts to control world politics in that way.

[3]The parties' motion papers assume without discussing that the burden of production and proof on the mitigation issue is on LaSalle. That is to say, lack of mitigation is a defense on which a defendant bears the burden. *Nomura, supra*, confirms that this is New York law.
Allocation of the burden of proof is a matter governed by state law, applicable here under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). *Safeco Ins. Co. of America v. City of White House, Tennessee*, 191 F.3d 675 (6th Cir. 1999).

servicer to the extent those failures have increased the Purchase Price now payable[4].

Accordingly, Wells Fargo's Motion in Limine is DENIED as to any evidence LaSalle may offer (otherwise assuming admissibility) of Crown NorthCorp's failure to perform its duties as special servicer to the extent those failures have increased the Purchase Price now payable. As to other possible evidence of other possible failures by Wells Fargo to mitigate its damages, the Motion in Limine is GRANTED.

In its prior Decision the Court declined to reopen discovery "without prejudice to its [LaSalle's request] renewal upon a more convincing showing of necessity." (Decision , Doc. No. 381, PageID 24873). No such showing has been made and discovery remains closed.

The Court confirms that this case is set for status conference on July 28, 2010, to set the trial on damages.

July 17, 2010.

s/ **Michael R. Merz**
United States Magistrate Judge

---

[4] As a hypothetical example, if Crown NorthCorp failed to collect rents on the Rooths' property and those rents either were retained by the tenants or retained by the borrowers and not used as required by the terms of the loan to pay on the loan balance, that portion of the Purchase Price payable by LaSalle to Wells Fargo attributable to the "loan balance" might be reduced by those amounts of unpaid rent.